```
              UNITED STATES DISTRICT COURT
          FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ELIAS NIEVES,                   :   CASE NO. 1:12-CV-0066
                                :
          Petitioner            :   (Judge Conner)
                                :
     v.                         :   (Magistrate Judge Smyser)
                                :
                                :
JOHN E. WETZEL, et al.,         :
                                :
          Respondents           :
```

## REPORT AND RECOMMENDATION

Several years ago, the Pennsylvania Board of Probation and Parole issued a decision that the petitioner be paroled to a Community Corrections Center. Despite that decision, the petitioner remains incarcerated at a State Correctional Institution. The petitioner contends that his continued incarceration is in violation of his federally protected rights and rights under state law. He has filed a petition for a writ of habeas corpus. He raises due process, equal protection, ex post facto, and state law claims. For the reasons that follow, we recommend that the petition be denied.

I. Background and Procedural History.

In July of 1987, the petitioner "raped a twenty-five-year-old woman at knifepoint in her home." *Nieves v. Pennsylvania Board of Probation and Parole,* 995 A.2d 412, 416 (Pa.Commw.Ct. 2010). "Nine days later," he "raped a twelve-year-old girl at knifepoint." *Id.* He was convicted of rape, statutory rape, indecent assault, involuntary deviate sexual intercourse, corruption of the morals of a minor, terroristic threats, and recklessly endangering another person. *Id.* He was sentenced to sixteen years and eleven months to forty years of imprisonment. *Id.*

In May of 2008, the Board issued a decision granting the petitioner parole to a Community Corrections Center (CCC). *Doc. 17-1* at 20.[1] The Board's decision provided among other things that the petitioner must have "an approved plan prior to release from the residency." *Id.* at 21. As a result of the Board's decision, the Pennsylvania Department of Corrections placed the petitioner "on a waiting list for one of fifty beds reserved for sex offenders in the Department's CCCs." *Nieves v. Pennsylvania*

---

1. Although the Board's decision actually provides for parole "on or after completion of sex offender program," it appears that the petitioner had already completed the institutional sex offender program.

2

*Board of Probation and Parole,* 983 A.2d 236, 238 (Pa.Commw.Ct. 2009).

After the Board had issued its decision in the petitioner's case, the Governor of Pennsylvania imposed a temporary moratorium on parole releases pending a review of the paroling of violent offenders. *Id.* at 239. That review included a report entitled "Restoring Parole and Related Processing for Categories of Violent State Prisoners: Findings and Recommendations II" by John S. Goldkamp. *Id.*[2] The Goldkamp Report recommended "a process to identify the most violent offenders, the creation of specialized CCCs to deal with them and the development of intensive programming for their first ninety days of release from prison." *Id.* In implementing these recommendations, the Board and the Department of Corrections placed the petitioner "in the most violent offender category and determined that he must undergo intensive programming at one of the specialized CCCS." *Id.*

---

2. We note that, on March 29, 2010, Goldkamp issued a final report titled "Parole and Public Safety in Pennsylvania: A Report to Governor Edward G. Rendell." That report postdates the Board's modification of its decision in the petitioner's case. It also postdates the Commonwealth Court's first decision. *Nieves v. Pennsylvania Board of Probation and Parole,* 983 A.2d 236, 238 (Pa.Commw.Ct. 2009). Although it was issued before the Commonwealth Court's second decision, that decision does not mention it. *See Nieves v. Pennsylvania Board of Probation and Parole,* 995 A.2d 412, 416 (Pa.Commw.Ct. 2010).

"On February 2, 2009, following the adoption of new procedures for the release of violent offenders, the Board modified its decision, stating that [the petitioner] would be released on parole "upon completion of [a] sex offender program to a specialized CCC with violence prevention programming. . . ." "As a result of this change, the Department placed [the petitioner] on a waiting list for one of ten beds reserved for violent sex offenders in the Department's specialized CCCs." *Nieves v. Pennsylvania Board of Probation and Parole,* 995 A.2d 412, 415 (Pa.Commw.Ct. 2010). After that the Board informed the petitioner that he needs an approved home plan before he can receive a bed date at a CCC. *Id.* He submitted numerous proposed home plans, but the Board rejected them. *Id.*

The petitioner filed a petition for review of the Board's decision to the Commonwealth Court of Pennsylvania. He named as respondents the Board, the Pennsylvania Department of Corrections, and the Department of Corrections' Community Corrections Center. In October of 2009, the Commonwealth Court dismissed the Department of Corrections and the Department of Corrections' Community Corrections Center. *Nieves v. Pennsylvania Board of Probation and Parole,* 983 A.2d 236 (Pa.Commw.Ct. 2009). In April of 2010, the Commonwealth Court granted summary relief to the Board. *Nieves v. Pennsylvania Board of Probation and Parole,* 995

A.2d 412, 415 (Pa.Commw.Ct. 2010). In a one-line per curiam order, the Pennsylvania Supreme Court affirmed the Commonwealth Court. *Nieves v. Pennsylvania Board of Probation and Parole,* 33 A.3d 1260 (Pa. 2011).

The petitioner then filed this habeas corpus petition. After initial briefing, we appointed counsel to represent the petitioner, and we ordered additional briefing. The petition is now ripe for decision.

II. 28 U.S.C. § 2254 Standards.

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 limits the power of a federal court to grant a state prisoner's petition for a writ of habeas corpus. *Cullen v. Pinholster,* 131 S.Ct. 1388, 1398 (2011). 28 U.S.C. § 2254(d) precludes federal habeas corpus relief with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

5

The standard under Section 2254(d) is highly deferential and difficult to meet. *Cullen, supra,* 131 S.Ct. at 1398. It "reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter,* 131 S.Ct. 770, 786 (2011)(quoting *Jackson v. Virginia,* 443 U.S. 307, 332 n.5 (1979)(Stevens, J., concurring in judgment)). It "'demands that state-court decisions be given the benefit of the doubt.'" *Cullen, supra,* 131 S.Ct. at 1398 (quoting *Woodford v. Visciotti,* 537 U.S. 19, 24 (2002)).

Under Section 2254(d)(1), "clearly established Federal law" signifies the holdings, not the dicta, of Supreme Court decisions. *Howes v. Fields,* 132 S.Ct. 1181, 1187 (2012). "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen, supra,* 131 S.Ct. at 1398.

Under the "contrary to" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially

indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id.* at 413. "A court that unreasonably extends a rule in a new context or, in the alternative, unreasonably fails to extend a rule may also be deemed to unreasonably apply the correct rule." *Fischetti v. Johnson,* 384 F.3d 140, 148 (3d Cir. 2004). Federal habeas relief may be granted only if the state court's application of clearly established federal law was objectively unreasonable. *Keller v. Larkins*, 251 F.3d 408, 418 (3d Cir. 2001). "[A]n incorrect application of federal law alone does not warrant relief." *Id.* "[I]f the state-court decision was reasonable, it cannot be disturbed." *Hardy v. Cross,* 132 S.Ct. 490, 495 (2011). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter,* 131 S.Ct. 770, 786 (2011)(quoting *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004)).

7

Under the "unreasonable determination of the facts" provision of § 2254(d)(2), the test "is whether the petitioner has demonstrated by 'clear and convincing evidence,' § 2254(e)(1), that the state court's determination of the facts was unreasonable in light of the record." *Roundtree v. Balicki,* 640 F.3d 530, 537-38 (3d Cir. 2011). "[T]he evidence against which a federal court measures the reasonableness of the state court's factual findings is the record evidence at the time of the state court's adjudication." *Id.* at 538.

III. Discussion.

A. Proper Respondent.

The petition names the following as respondents: John E. Wetzel, the Secretary of the Pennsylvania Department of Corrections; the Pennsylvania Board of Probation and Parole; the Pennsylvania Department of Corrections; and the Department of Corrections' Community Corrections Center.  The petitioner is incarcerated at the State Correctional Institution at Coal Township.  The respondents contend that this court does not have jurisdiction because the petitioner has not named the Superintendent of that institution as the respondent.

8

28 U.S.C. § 2242 provides that an application for a writ of habeas corpus shall allege the name of the person who has custody over the petitioner.  And 28 U.S.C. § 2243 provides that the writ "shall be directed to the person having custody of the person detained."  Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "If the petitioner is currently in custody under a state-court judgment, the petition must name as respondent the state officer who has custody."  The note to that Rule provides that the proper respondent is usually the warden of the institution in which the petitioner is incarcerated or the chief officer in charge of state penal institutions.  More recently, the Supreme Court has indicated that "there is generally only one proper respondent to a given prisoner's habeas petition" and that in a case challenging present physical confinement "the proper respondent is the warden of the facility where the prisoner is being held, not . . . some other remote supervisory official." *Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004).

In this case, the proper respondent is the Superintendent of the State Correctional Institution at Coal Township.  The court has jurisdiction over the Superintendent at Coal Township.  Thus, we will recommend that the Superintendent at Coal Township be

substituted as the proper respondent, and we reject the respondents' assertion that the court lacks jurisdiction.

B. Due Process.

The petitioner claims that he was denied due process.

The Fourteenth Amendment Due Process Clause provides that no state shall "deprive any person of life, liberty, or property, without due process of law." The Board has broad discretion in deciding when, or if, a prisoner should be released on parole. *McGill v. Pennsylvania Dept. of Health, Office of Drug and Alcohol Programs,* 758 A.2d 268, 271 (Pa.Commw.Ct. 2000). A Pennsylvania prisoner does not have a liberty interest in being released on parole. *See Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7 (1979)(the Constitution creates no liberty interest in parole); *Rogers v. Pennsylvania Bd. of Probation and Parole*, 724 A.2d 319, 323 (Pa. 1999)(under Pennsylvania law, parole is a matter of grace and mercy shown to a prisoner and the Board's decision to grant or deny parole does not affect a liberty interest). Thus, a prisoner does not have a viable procedural due process claim based on the denial of parole.

But the Due Process Clause contains a substantive component as well as a procedural component. *New Jersey Retail Merchants Assoc. v. Sidamon-Eristoff,* 669 F.3 374, 398 (3d Cir. 2012). Substantive due process "limits what the government may do regardless of the procedures that it employs." *Evans v. Secretary Pennsylvania Dept. of Corrections,* 645 F.3d 650, 659 (3d Cir. 2011).

The substantive due process analysis differs depending upon whether the challenged action is legislative or executive. *Id.* When, as in this case, the challenged action is executive the question is whether the action "is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.* (quoting *Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 847 n.8 (1998)). "The conduct must be "intended to injure in some way unjustifiable by any government interest. . . ." *Newman v. Beard,* 617 F.3d 775, 782 (3d Cir. 2010)(quoting *Lewis, supra,* 523 U.S. at 849). The Board may not arbitrarily deny parole on the basis of impermissible criteria such as race, religion, or the exercise of free speech rights, or on criteria with no rational relationship to the purpose of parole. *Block v. Potter*, 631 F.2d 233, 236-37 (3d Cir. 1980).

11

In this case, the Board did not base its decisions on impermissible criteria, and its conduct does not shock the conscience. The Board's actions were taken for legitimate government reasons. Assignment to a specialized CCC reflects the unique needs regarding rehabilitation of violent sex offenders. *See generally McKune v. Lile*, 536 U.S. 24, 33 (2002)("When convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault. States thus have a vital interest in rehabilitating convicted sex offenders."). It was within the Board's discretion to determine that the petitioner should be placed in a specialized CCC given his conviction. Further, the requirement for an approved home plan prior to placement in a CCC permits the efficient use of limited CCC bed space. It ensures that an offender sent to a CCC will be in the CCC for only a limited time instead of for an extended time while he seeks to obtain approval for a home plan. It thus avoids one prisoner taking bed space in a CCC for an unduly lengthy period of time when several prisoners could use that bed space and transition in a timely manner out of the CCC and back into society.

For the petitioner to remain incarcerated even though the Board long ago issued a decision that he be paroled to a CCC appears to be a matter that the Board and the Department of

Corrections in their discretion would elect to address sooner rather than later.  But the Board's actions in seeking to ensure that the petitioner is placed in a suitable CCC and that he has an approved plan in place to increase his chances of succeeding on parole cannot be seen as so egregious or outrageous as to shock the conscience.

The petitioner claims that the Board incorrectly denied his proposed home plans.  "[F]ederal courts are not authorized by the due process clause to second-guess parole boards and the requirements of substantive due process are met if there is some basis for the challenged decision." *Coady v. Vaughn,* 251 F.3d 480, 487 (3d Cir. 2001).  There was some basis for the denial of the petitioner's home plans: the Board rejected the home plans proposed by the petitioner "pursuant to a Board policy stating that a sex offender's home plan may not be within 1,000 feet of a school, day care center or playground when one of the sex offender's victims was under eighteen years of age at the time of fo the offense." *Nieves v. Pennsylvania Board of Probation and Parole,* 995 A.2d 412, 415 (Pa.Commw.Ct. 2010).  Even assuming, as the petitioner argues, that the Board committed factual errors in rejecting his home plans, the Board had some basis for rejecting the plans.  Thus, the petitioner is not entitled to habeas relief as to his substantive due process claims.

C. Equal Protection.

The plaintiff claims that the Board denied him equal protection.

The equal protection clause "is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.'" *Artway v. Attorney General*, 81 F.3d 1235, 1267 (3d Cir. 1996)(quoting *City of Cleburn v. Cleburn Living Center*, 473 U.S. 432, 439 (1985)). In order to establish a viable equal protection claim, a petitioner must show an intentional or purposeful discrimination. *Wilson v. Schillinger*, 761 F.2d 921, 929 (3d Cir. 1985).

Sex offenders have higher recidivism rates than other offenders. *See McKune, supra,* 536 U.S. at 33.  Thus, the Board has a rational basis to treat sex offenders differently that other prisoners with respect to the requirement for confinement in a specialized CCC.  The petitioner's equal protection claim is without merit.

14

D. Ex Post Facto.

The petitioner's ex post facto claim is based on the policy change that created specialized CCCs and that resulted in the Board modifying its order. It is also based on the Board's alleged policy change requiring an approved home plan before a prisoner will be paroled to a CCC.

The United States Constitution forbids ex post facto laws. U.S. Const. Art.I, §9. "The prohibition of ex post facto laws has two purposes: (1) it prevents legislatures from interfering with the executive and judicial roles of prosecution and punishment; and (2) it assures that legislative acts give fair warning of what actions will be punished and the degree to which they will be punished." *Coady, supra,* 251 F.3d at 487-88.

The Ex Post Facto Clause is aimed at laws that retroactively alter the definition of a crime or that increase the punishment for criminal acts. *California Dept. of Corrections v. Morales*, 514 U.S. 499, 504 (1995). Two critical elements must be present for a law to be found to be ex post facto: first, the law must be retrospective, applying to events prior to its enactment; and second, it must disadvantage the offender affected by it. *Lyons v. Mendez*, 303 F.3d 285, 287-288 (3d Cir. 2002).

15

Retroactive changes in laws governing parole of prisoners may in some instances violate the prohibition against ex post facto laws. *Garner v. Jones*, 529 U.S. 244, 250 (2000).  But "the *Ex Post Facto* Clause should not be employed for 'the micromanagement of an endless array of legislative adjustments to parole and sentencing procedures.'" *Id.* at 252 (quoting *Morales, supra,* 514 U.S. at 508).  The Ex Post Facto Clause does not forbid every legislative change that has any conceivable risk of affecting a prisoner's punishment.  *Morales, supra,* 514 U.S. at 508.  Rather, the controlling inquiry is whether the change creates "a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Id.* at 509.  The prisoner "must show that as applied to his own sentence the law created a significant risk of increasing his punishment." *Garner, supra,* 529 U.S. at 255.

     Recognizing that the Ex Post Facto Clause prohibits ex post facto laws, the Commonwealth Court denied the petitioner's ex post fact claims on the basis that the policies involved in this case are not laws. *See Nieves v. Pennsylvania Board of Probation and Parole,* 983 A.2d 236, (Pa.Commw.Ct. 2009)("the Department's new CCC bed procedure is not a law"); *Nieves v. Pennsylvania Board of Probation and Parole,* 995 A.2d 412, 418 (Pa.Commw.Ct. 2010)("The Board's modification of its prior decision is not the

16

enactment of a law."); *Id.* at 421 ("the Boards's policy is not a law.").

The petitioner contends that the Commonwealth Court's conclusion that the policies involved here are not laws for ex post facto purposes is contrary to federal law. He cites two Third Circuit cases. He cites *Mickens-Thomas v. Vaughn,* 321 F.3d 374 (3d Cir. 2003), a case where the court addressed a legislative change to 61 P.S. § 331.1, a statute which set forth tenets of public policy as to parole. He also cites *Newman v. Beard,* 617 F.3d 775 (3d Cir. 2010), a case where the court addressed the enactment of 42 Pa.C.S.A. § 9718.1. The Commonwealth Court's decision is not contrary to these two cases, since both of these cases addressed legislative changes. Even assuming arguendo that the Commonwealth Court decision is contrary to these two cases, another principal of federal habeas corpus law stands in the petitioner's path. Under 28 U.S.C. § 2254(d)(1), we must determine whether the Commonwealth Court's adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'" *Parker v. Matthews,* 132 S.Ct. 2148, 2155

(2012). "It therefore cannot form the basis for habeas relief under AEDPA." *Id.*

The United States Supreme Court addressed ex post facto claims in the parole context in two cases. In the first case, *California Dept. of Corrections v. Morales,* 514 U.S. 499 (1995), the Court considered a statutory change to the frequency of parole reconsiderations for certain inmates. The Commonwealth Court's decision in this case cannot be seen to be contrary to or to be an unreasonable application of that decision because that case dealt with a statutory change. In the second case, *Garner v. Jones,* 529 U.S. 244 (2000), the Court considered a change to a rule of the Georgia Board of Pardons and Paroles. That Rule was published in Georgia's administrative code. That case is closer to this case because it did not involve a statutory change. It considered a published Rule in the administrative code. This case concerns changes to policies. The petitioner has not shown that these policies were published in the administrative code. Thus, we cannot say the Commonwealth Court's decision that the parole policies at issue in this case are not laws for ex post facto purposes was contrary to or an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States. Accordingly, the petitioner is not entitled to habeas corpus relief.

We note that the petitioner requests that the court hold a hearing. But because "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits," *Cullen, supra,* 131 S.Ct. at 1398, we could not use evidence developed at the hearing to decide the petitioner's ex post facto claims.

E. State Law Claims.

The petitioner also contends that the Board violated the following state laws: 61 P.S. § 315 (repealed October 13, 2009); 37 Pa.Code § 63.1; and 42 Pa.C.S. § 9798. In conducting habeas review, a federal court is limited to deciding whether the Constitution, laws, or treaties of the United States have been violated. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Federal habeas corpus relief does not lie for errors of state law. *Swarthout v. Cooke,* 131 S.Ct. 859, 861 (2011). Thus, the petitioner is not entitled to habeas relief based on the alleged violation of state laws.

19

IV. Recommendations.

Based on the foregoing, it is recommended that the Superintendent of the State Correctional Institution at Coal Township be substituted as the proper respondent, that the petition for a writ of habeas corpus be denied, and that the case be closed.

*/s/ J. Andrew Smyser*
J. Andrew Smyser
Magistrate Judge

Dated: August 23, 2012.